IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | |
|---|---|
| DOUGLAS WHEELER, ) | CASE NO. 5:12 CV 445 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE DONALD C. NUGENT |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, | Magistrate Judge James R. Knepp II |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Report and Recommendation of Magistrate Judge James R. Knepp II (Docket #14), recommending that the Commissioner of Social Security's final determination denying Plaintiff, Douglas Wheeler's application for Disability Insurance Benefits be affirmed.

**Factual and Procedural Background**

As set forth by the Magistrate Judge, the factual and procedural history of this case is as follows:

Procedural History

In April 2008, Plaintiff filed an application for DIB alleging disability since November 12, 2007 due to peripheral neuropathy, depression, anxiety, and chronic fatigue. (Tr. 111–12, 130). His claims were denied initially and upon reconsideration. (Tr. 82–90, 92–98). Plaintiff requested an administrative hearing to review this decision (Tr. 99), which was held September 1, 2010. (Tr. 47).On

September 21, 2010, the ALJ issued a decision denying Plaintiff's claim. (Tr. 22–33).

Vocational Background

Plaintiff was 48 years old on his alleged disability onset date and 51 years old at the time of the ALJ's decision. (Tr. 22, 33, 50). After high school, Plaintiff spent 12 years performing skilled labor in the steel industry. (Tr. 65). At age 29, Plaintiff went to college and received a two-year degree while working in the steel mill full time. (Tr.65–66). Upon graduation, Plaintiff took a job in public accounting and later as a financial controller. (Tr. 66).

Medical History

Plaintiff saw treating physician I. Praveen Kumar, M.D. on October 17, 2007 because he was experiencing numbness and tingling in his lower extremities, previously diagnosed as peripheral neuropathy. (Tr. 236). Dr. Kumar noted Plaintiff's neuropathy symptoms were worse. (Tr. 236). At that time, Dr. Kumar described Plaintiff as having a history of diabetes, sleep apnea, and obesity. (Tr. 236).

On November 15, 2007 Plaintiff saw neurologist Jay P. Berke, M.D. regarding the numbness, burning, and tingling he was experiencing. (Tr. 221). Dr. Berke noted areflexia and diminished vibratory sensation in Plaintiff's feet and also noted Plaintiff had a history of diabetes and alcoholism. (Tr. 221). He diagnosed peripheral neuropathy, which likely resulted from Plaintiff's diabetes and alcohol use. (221). At this time, Dr. Berke prescribed Lyrica to treat Plaintiff's neuropathy. (Tr. 221).

Dr. Kumar completed a long-term-disability statement for Plaintiff on January 25, 2008. (Tr. 229–30). He reported Plaintiff had painful peripheral neuropathy, with symptoms consisting of chronic, severe pain in his feet, legs, and arms. (Tr. 229–30). Dr. Kumar indicated Plaintiff could not sit, stand, or walk for prolonged periods of time and opined Plaintiff's severe pain restricted his ability to bend, lift, squat, or crawl. (Tr. 230). Dr. Kumar stated Plaintiff could not work at the time and did not know when Plaintiff could return to work. (Tr. 230).

On February 18, 2008 Plaintiff returned to Dr. Kumar for a follow-up visit. (Tr. 244). Plaintiff told Dr. Kumar he had tried taking Neurontin but it had not helped and also reported he had stopped taking Lyrica because although it improved his symptoms a little, Plaintiff was experiencing strange dreams, drowsiness, and weight gain. (Tr. 244). Plaintiff stated the Cymbalta he had been prescribed had helped to some extent. (Tr. 244). Plaintiff told Dr. Kumar he was depressed because of the continuous pain. (Tr. 244). Plaintiff's depression and continuous pain were causing him to have difficulty sleeping and concentrating.

(Tr. 244). Dr. Kumar found Plaintiff was still unable to work due to persistent pain and difficulty concentrating, further stating Plaintiff should stay off work until further notice. (Tr. 244).

On March 13, 2008 Plaintiff saw Michael D. London, M.D. complaining of bilateral shoulder pain. (Tr. 264–65). Plaintiff had previously treated with Dr. London for knee problems and surgeries in 2003 and 2006. (See Tr. 267–85). At the March 13, 2008 visit, Plaintiff reported increased pain with overhead activities, driving, and sleeping on his right arm. (Tr. 264). On examination, Plaintiff demonstrated no instability in his upper extremities and had normal motor strength and muscle tone. (Tr. 264). Dr. London noted Plaintiff had mild spurring over the AC joint bilaterally, but no tenderness to palpitation over those joints. (Tr. 265). Plaintiff did exhibit tenderness to palpation "over the long head of the biceps tendon and the subacromial space bilaterally." (Tr. 265). He had a positive impingement sign bilaterally and a negative drop arm sign bilaterally. (Tr. 265). Overall, Plaintiff had full active non-irritable range of motion in both shoulders, his neurovascular status was intact, and radiographs of both shoulders were unremarkable. (Tr. 265). Dr. London stated Plaintiff's symptoms were most consistent with bilateral rotator cuff tendonitis, with the right shoulder more symptomatic than the left. (Tr. 265). He prescribed Naprosyn, a prescription pain reliever, and physical therapy. (Tr. 265).

In April 2008, Plaintiff returned to Dr. London reporting his shoulder pain had not improved. (Tr. 263). Plaintiff stated physical therapy had been worsening his symptoms. (Tr. 263). Dr. London ordered an MRI, which verified Plaintiff had moderate tendinitis in his shoulder that did not require surgery. (Tr. 261). Dr. London gave Plaintiff injections of DepoMedrol and Marcaine, which provided some symptom relief. (Tr. 261). During April 2008, Dr. London's treatment notes show Plaintiff was experiencing pain which limited his daily activities. (Tr. 261–63). Plaintiff returned for a follow up on June 23, 2008, reporting "moderately good symptom relief" for about a week after the injection. (Tr. 260). Plaintiff admitted his symptoms decrease when he took Naprosyn, but stated he did not take the drug on a regular basis. (Tr. 260). Dr. London instructed him to continue taking the pain medication and planned to follow up in two months to further evaluate Plaintiff's condition. (Tr. 260).

Plaintiff saw Dr. Kumar and Dr. Berke several times between March and July 2008. (See Tr. 332–35, 337–40). During each visit there was generally little change in Plaintiff's condition; Plaintiff continued to report pain unimproved by medication, and Dr. Kumar stated Plaintiff was unable to work. (Tr. 332, 337–40). However on June 19, 2008, Dr. Berke stated Plaintiff's condition had improved since November 2007. (Tr. 335). On July 11, 2008 Dr. Kumar completed a telediction response to the Bureau of Disability Determination stating Plaintiff had

a prior history of alcohol abuse, sleep apnea, diabetes mellitus, hypertension, symptomatic small fiber neuropathy, depression, insomnia, and chronic fatigue. (Tr. 327). Dr. Kumar believed Plaintiff "should be qualified for disability because of his underlying medical conditions." (Tr. 324.)

On August 20, 2008 Plaintiff saw Dr. Burkholder for his unresolved symptoms because Dr. Berke was absent. (Tr. 421–22). Dr. Burkholder noted a previous EMG failed to show definite evidence of peripheral neuropathy. (Tr. 421). He also noted a number of medications that had not improved Plaintiff's symptoms or had caused unwanted side effects. (Tr. 421). Sensory examination showed reduced vibratory sense in Plaintiff's toes, reduced pin perception in his knees, and somewhat reduced tactile sensation above the ankle. (Tr. 421–22). Plaintiff's gait was normal, including tandem walking, and Romberg's sign was not present. (Tr. 422). Dr. Burkholder ordered a percutaneous skin biopsy for nerve fiber density to determine if pathologic evidence of peripheral neuropathy existed. (Tr. 422). He stated if pathological evidence of peripheral neuropathy was present, Plaintiff should be treated with more pain medication and if the pathology for peripheral neuropathy was not present, Plaintiff should be evaluated for an underlying emotional cause of his condition. (Tr. 422). This biopsy was collected on November 10, 2008. (Tr. 423–25). Plaintiff's left calf had significantly reduced epidermal nerve fiber density, a result consistent with small fiber neuropathy. (Tr. 423). Plaintiff's left thigh showed normal nerve fiber density. (Tr. 423).

In December 2008, Plaintiff sought treatment at the Cleveland Clinic Neurological Institute upon referral from Dr. Kumar. (See Tr. 472–82). Plaintiff was found to have "[s]tocking and glove decreased perception of light touch, pinprick, and vibration, and proprioception". (Tr. 474). His neurological examination was otherwise normal and plaintiff appeared well. (Tr. 472–74). Test results showed "no evidence of significant postganglionic sympathetic sudomotor abnormality like that seen in autonomic/small fiber neuropathy." (Tr. 480).

Plaintiff returned to the Cleveland Clinic in March 2009 for further evaluation of his neuropathic pain. (Tr. 467). Plaintiff's extremities were normal except for loss of light touch sensation in both hands and feet bilaterally. (Tr. 469). His upper and lower extremity strength was intact, and he had a normal spine range of motion. (Tr. 469). At this time, Plaintiff was started on Topamax and the doctor recommended use of a TENS unit. (Tr. 469). Plaintiff was not prescribed narcotics because of his history of addiction. (Tr. 469).

Subsequent appointments revealed no improvement from the TENS unit but some help from the Topamax, although this also caused plaintiff to have difficulty concentrating and caused headaches. (Tr. 458, 464–65). At these appointments, Plaintiff's extremities were normal, his range of motion was normal, his muscular strength was intact, and his gait was normal, though he had

decreased sensation. (Tr. 458, 465). On July 29, 2009, Plaintiff underwent a pain medicine evaluation with Gwenn Holler, CNS at the Cleveland Clinic. (Tr. 453–56). She noted his pain suggested very severe functional impairment. (Tr. 454). His neurological exam was positive for numbness and weakness. (Tr. 454). Holler recommended a chronic pain rehabilitation program and listed Plaintiff's prognosis as good. (Tr. 456).

In subsequent visits to Dr. Kumar dating from June 2009 to June 2010, Plaintiff's condition remained unchanged. (See Tr. 499–505).

Opinion Evidence

Treating physician Dr. Kumar assessed Plaintiff's physical residual functional capacity (RFC) on October 6, 2008. (Tr. 408–11). He stated Plaintiff's pain constantly interferes with his attention and concentration to perform even simple tasks. (Tr. 409). He also opined Plaintiff is incapable of even low stress jobs due to anxiety, depression, and neuropathy. (Tr. 409). Dr. Kumar stated Plaintiff could maybe walk for a block without rest or severe pain. (Tr. 409). He believed Plaintiff could sit for only five minutes at a time, for a total of one hour per day. (Tr. 409). He stated Plaintiff could sit, stand, and walk for less than two hours per day, but also stated Plaintiff needs to walk around during a work day. (Tr. 409–10). Dr. Kumar also opined Plaintiff would need to shift positions at will and would take unscheduled breaks every few minutes due to pain. (Tr. 410). Additionally, Dr. Kumar stated Plaintiff could never lift any weight; could never twist, stoop, or crouch; could never climb ladders or stairs; had significant limitations in repetitive reaching, handling, and fingering; and wold likely miss work more than four times each month. (Tr. 410–11).

On August 5, 2008, Plaintiff was evaluated by consultative psychologist James M. Lyall, Ph.D. (Tr. 359–62). Plaintiff drove himself to Dr. Lyall's office and arrived on time for the interview. (Tr. 359). Dr. Lyall gave Plaintiff a global assessment functioning score of 55. (Tr. 361). This score is composed of a symptom impairment score of 55 due to Plaintiff's depressive features and a functional impairment score of 65 taking into account Plaintiff's focus and attention problems. (Tr. 361). Dr. Lyall found Plaintiff had moderate impairment in his ability to relate to others; his ability to maintain attention and perform simple repetitive tasks; and his ability to handle work related stress and pressure. (Tr. 362.) Dr. Lyall also found Plaintiff had mild impairment in his ability to understand and follow instructions. (Tr. 362).

State non-examining consultant R. Kevin Goeke, Ph.D. completed Psychiatric Review Technique and Mental RFC forms on August 12, 2008. (Tr. 380–97). Dr. Goeke found Plaintiff's psychological complaints credible in nature but not severity. (Tr. 396). He determined Plaintiff retained the ability to perform

simple to moderately detailed tasks in a low social demand setting without strict time or production standards. (Tr. 396). Dr. Goeke's assessment was affirmed four months later by non-examining consultant Aracelis Rivera, Psy.D. (Tr. 434).

Consulting physician Myung Cho, M.D. assessed Plaintiff's RFC on September 8, 2008. (Tr. 398–405). Dr. Cho found Plaintiff can occasionally lift and carry up to 50 pounds and frequently lift and carry up to 25 pounds. (Tr. 399). Dr. Cho found Plaintiff can stand, walk, or sit for up to six hours in a normal workday. (Tr. 399). Dr. Cho also found Plaintiff limited in his ability to push or pull with his lower extremities. (Tr. 399). Additionally, Dr. Cho opined Plaintiff can never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to temperature extremes; and should avoid all exposure to unprotected heights. (Tr. 400, 402). Ultimately, Dr. Cho found Plaintiff's statements regarding his symptoms were credible in nature and severity. (Tr. 403).

State consultative examiner Murrell Henderson, D.O. evaluated Plaintiff on December 5, 2008. (Tr. 426–32). Dr. Henderson found Plaintiff's symptoms consistent with peripheral neuropathy, but Plaintiff demonstrated a satisfactory range of motion in his upper and lower extremities; satisfactory grip strength; and no abnormalities were noted on his sensory exam. (Tr. 427). Dr. Henderson did not note any limitations associated with Plaintiff's condition. (Tr. 427).

Consultative physician Rebecca Neiger, M.D. completed a Physical RFC Assessment on January 23, 2009. (Tr. 435–42). Dr. Neiger found Plaintiff can occasionally lift and carry 20 pounds and frequently lift or carry 10 pounds. (Tr. 436). She also found Plaintiff can stand, walk, or sit for up to six hours in a normal workday. (Tr. 436). Dr. Neiger found Plaintiff is limited in his ability to push or pull with his lower extremities. (Tr. 436). Supporting this opinion, Dr. Neiger stated Plaintiff was unable to squat completely due to knee pain, though he could walk without difficulty and had a normal sensory exam. (Tr. 436–37). She opined Plaintiff is limited to only occasional foot controls bilaterally. (Tr. 437). Dr. Neiger found Plaintiff could never climb ladders, ropes, or scaffolds. (Tr. 437). She stated he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. (Tr. 437). Overall, Dr. Neiger found Plaintiff's statements regarding his limitations only partially credible, stating objective medical findings and physical examination did not support his alleged degree of limitations. (Tr. 440). Specifically, an EMG showed very mild mononeuropathy; Plaintiff had 5/5 strength throughout; he could use his hands normally; and he could walk normally without the use of an ambulatory aid. (Tr. 440). Dr. Neiger recommended discounting Dr. Kumar's statement that Plaintiff "should qualify for disability based on his underlying medical conditions" because he did not provide objective findings and testing to support his opinion. (Tr. 441).

Administrative Hearing and ALJ Decision

At the ALJ hearing, Plaintiff testified his chronic pain limited his

-6-

functioning beyond what state experts believed. (Tr. 50–69). Plaintiff testified he could walk for ten minutes, sit for an hour, and frequently lift up to ten pounds but no more than that even occasionally. (Tr. 56). Plaintiff further testified he could climb the stairs in his two story home one to two times per day. (Tr. 53). He testified he could only drive about once a week and never for more than fifteen minutes. (Tr. 53). Additionally, Plaintiff testified that although he attended church regularly, he was no longer able to attend the weekly Bible study class. (Tr. 53).

A vocational expert (VE) testified as to Plaintiff's job prospects in his current condition. (Tr. 69–75). The ALJ asked the VE to consider a person of Plaintiff's age, educational background, and vocational history who could perform medium work, with the following limitations:

> [T]hat individual could push or pull frequently below the shoulder level, but only occasionally above the shoulder level. Further that individual could only occasionally operate foot controls and occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl, but this individual could never climb ladders, ropes or scaffolds. Further, this individual can only occasionally perform overhead reaching bilaterally . . . but they could occasionally finger and feel objects. . . . Further, this individual would have to avoid concentrated exposure to hazardous moving machinery and unprotected heights. Also, this individual could only perform simple, routine and repetitive tasks in a low stress environment . . . mean[ing] no fixed production quotas. And finally, this individual could only occasionally interact with the public, coworkers and supervisors.

(Tr. 71). The VE testified such a person could perform the jobs of cleaner at a hospital, bus boy, and cook helper, each accounting for significant jobs in the national economy. (Tr. 72).

Limiting the individual to light work with the same limitations, the VE testified such a person could perform occupations such as office cleaner, outside deliverer, and cafeteria attendant, each of which accounts for significant jobs in the national economy. (Tr. 72–73). When the ALJ limited the hypothetical person to sedentary work, the VE testified no jobs would be available due to the limitation on fingering and feeling. (Tr. 73–74). Responding to Plaintiff's counsel, the VE also testified there would be no jobs for a person who could sit for only two hours at a time, would need to shift positions at will, would take frequent unscheduled breaks due to pain, would have their attention and concentration impaired more than 34 percent of the time, and was likely to be absent more than four days each month. (Tr. 74–75).

On September 21, 2010, the ALJ issued his decision finding Plaintiff not

disabled. (Tr. 19–33). After considering the entire record, the ALJ determined Plaintiff can perform light work, with the following limitations:

> [He] is capable of frequent reaching, pushing, and/or pulling bilaterally below shoulder level; occasional reaching, pushing, and/or pulling bilaterally overhead; occasional operation of foot controls; occasional postural movements but no climbing of ladders, ropes, or scaffolds; frequent bilateral handling; occasional bilateral fingering and feeling; and he must avoid concentrated exposure to extreme cold, vibration, hazardous moving machinery, and unprotected heights. In addition, [he] is capable of simple, routine, and repetitive tasks that are low-stress, meaning no fixed production quotas, and occasional interaction with the public, co-workers, and supervisors.

(Tr. 26). The ALJ then found – based on the VE's testimony – that Plaintiff could successfully adjust to other work existing in significant numbers in the national economy. (Tr. 33). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3–7).

Report and Recommendation at pp. 1-11.

## Report and Recommendation

Plaintiff filed his Complaint with this Court on February 23, 2012, challenging the final decision of the Commissioner. (Docket #1.) On February 6, 2013, the Magistrate Judge issued his Report and Recommendation. (Docket #14.) The Magistrate Judge found the ALJ's decision to be supported by substantial evidence. On February 19, 2013, Plaintiff filed objections to the Report and Recommendation. (Docket #15.) On March 5, 2013, the Commissioner filed a Response to Plaintiff's Objections. (Docket #16.)

## Standard of Review for a Magistrate Judge's Report and Recommendation

The applicable district court standard of review for a magistrate judge's report and recommendation depends upon whether objections were made to the report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R. CIV. P. 72(b) provides:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

The standard of review for a magistrate judge's report and recommendation is distinct from the standard of review for the Commissioner of Social Security's decision regarding benefits. Judicial review of the Commissioner's decision, as reflected in the decisions of the ALJ, is limited to whether the decision is supported by substantial evidence. *See Smith v. Secretary of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citation omitted).

## Conclusion

This Court has reviewed the Magistrate Judge's Report and Recommendation *de novo* and has considered all of the pleadings, transcripts, and filings of the parties, as well as the objections to the Report and Recommendation filed by Plaintiff. After careful evaluation of the record, this Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own.

Magistrate Judge Knepp thoroughly and exhaustively reviewed this case, and properly found the ALJ's decision to be supported by substantial evidence. Accordingly, the Report and Recommendation of Magistrate Judge Knepp (Document # 14) is hereby ADOPTED. The Commissioner's final determination denying Plaintiff's application for Disability Insurance Benefits is hereby AFFIRMED.

This case is hereby TERMINATED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATED: *March 18, 2013*